Isaac GOVAN, Plaintiff,

v.

James CAMPBELL, Albany County Sheriff; Edward Szostak; Michael Frese, Albany County Correctional Officer; and Co Rudolph, Albany County Correctional Officer, Defendants.

No. CV.9:98–CV–00710 GLS.

United States District Court, N.D. New York.

Oct. 29, 2003.

Isaac Govan, Ogdensburg, NY, Pro se.

Roche, Corrigan Law Firm (Robert P. Roche, Esq., Of Counsel), Albany, NY, for Defendants.

### DECISION AND ORDER [1]

SHARPE, United States Magistrate Judge.

## I. *Introduction*

Plaintiff, *pro se* Isaac Govan filed an action under 42 U.S.C. § 1983 claiming that the defendants violated his civil rights. The defendants filed a motion for summary judgment. After reviewing Govan's claims, this court grants the defendants' motion for summary judgment because Govan's complaint fails to state a claim for which relief can be granted.

## II. *Background*

The original complaint was filed more than five years ago, but Govan amended that complaint on October 12, 2001. On May 12, 2003, the defendants filed a motion for summary judgment, and Govan subsequently responded. Govan contends that the defendants violated his civil rights under the Eighth and Fourteenth Amendments. Essentially, he claims that the defendants failed to provide him access to the grievance process, interfered with his mail, subjected him to inhuman prison conditions, assaulted him and denied him medical treatment.

The defendants maintain that Govan has never specified what injury the prison conditions, assault and denial of medical treatment caused him. They further maintain that the prison conditions did not violate Govan's rights, and that they were not responsible for the interruption of his mail. This court addresses each of these claims *seriatim.*

---

1. This case is currently before this court on consent.

## III. Facts [2]

### A. Assault

Govan alleges that while he was incarcerated at the Albany County Correctional Facility ("Albany"), he suffered physical and verbal abuse by Correctional Officers Rudolph and Frese. Specifically, he claims that Frese was sleeping while supervising recreation in the gym. During that time, Govan suffered a leg injury when he was struck with a basketball. Thereafter, he requested medical attention but was refused by Frese and Rudolph. Govan also claims that Frese used racial slurs, and pushed him against a wall. When Frese pushed him against the wall, he rubbed against Govan, and Govan argues that the rubbing constituted an unnatural sex act. Govan maintains that Rudolph spit on him, cursed at him, used vulgar language toward him and threatened him with physical violence. Govan claims that Rudolph used other inmates to intimidate him into dropping charges he had against him.

### B. Prison Conditions

Govan complains of leaking pipes, rust on the walls, rust bubbles in the shower stall, and a splotchy brown substance on the walls and ceiling. He alleges that Szostak, the Albany County Jail Superintendent, poorly maintained the facility. Govan complains that there were cockroach problems, and that birds were permitted to enter through the windows of the facility. Govan also claims that he may have been exposed to the HIV virus, and Hepatitis B and C, through a dentist who worked for the facility who was using unsafe procedures.[3]

### C. Denial of Grievances

Govan maintains that he was denied access to the grievance and appeals process by Szostak. Specifically, he maintains that Szostak failed to mail his appeal, thereby denying him his right to appeal. Govan also maintains that Campbell, as Sheriff, did not respond to his complaint regarding his mail problem. Finally, Govan claims that Campbell failed to forward his legal mail to Rensselaer County after he was transferred in the Fall of 1998. Govan claims that his file was left behind at Albany where it was destroyed by unknown persons.

## IV. Discussion

### A. Legal Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999). "When a motion for

---

2. With some necessary additions, the facts are taken from the previously issued Order (*Dkt. No. 87*).

3. This court previously dismissed Dr. Weinstien, the dentist, from this action. Even if Govan is attempting to accuse the remaining defendants of failing to supervise the dentist, this allegation is conclusory and unsupported by the evidence and must fail. *See e.g., Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning).

summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir. 2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

■ Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General*

*Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

■ This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00–CV–1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002)(*inter alia* citing *Bundy Am. Corp. v. K–Z Rental Leasing, Inc.,* 00–CV–260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

■ Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470–71.

■ In this case, Govan did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the

properly supported facts contained in the defendants' 7.1 statement (*Dkt. No. 134*) as true for purposes of this motion.[4] With this standard in mind, the court now turns to the sufficiency of Govan's claims.

### B. *Prison Conditions*

Govan alleges that Szostak failed to provide a clean and healthy living environment in violation of his Eighth Amendment. In order to prevail on a claim that the conditions of confinement constitute cruel and unusual punishment, a plaintiff must satisfy both an objective element and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the objective element, a "plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir.1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

The subjective element requires a plaintiff to show that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In cases involving prison conditions, the state of mind is one of "deliberate indifference." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson*, 501 U.S. at 302–03, 111 S.Ct. 2321). Conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. *See Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392.

In this case, Govan complains that the shower stalls were unclean and had rust bubbles. He also complains that the tier was infested with cockroaches which could have crawled into his orifices while he slept, or inside his clothing and shoes. He further claims that the sink and hot water in his cell did not work. Govan also claims that "wild birds" were permitted to fly freely through the facility. Finally, Govan contends that his safety was in danger since the officer on duty could not see directly into his cell at all times.

The defendants maintain that Govan has failed to state a claim for which relief can be granted. They maintain that the prison conditions in question were not serious enough to trigger a violation of Govan's constitutional rights. Moreover, the defendants point out that Govan has failed to show that they intended to cause him harm by subjecting him to the alleged prison conditions. Campbell's affidavit informs the court that hot water was provided in the shower area and thus, hot water was purposely turned off in every cell. *Campbell Aff. at ¶ 6*. Moreover, the defendants argue that the fact that Govan could have caught a "cold" or an "infection" is insufficient to show a violation of the constitution. The defendants further maintain that even if the prison conditions were unpleasant, they did not violate the constitution.

Govan has failed to assert unconstitutional prison conditions. As mentioned, conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. Govan asserts conditions which "could have" caused him harm but he fails to assert how he was actually harmed. It may well be that the shower stalls had rust bubbles, that wild birds were permitted to

---

**4.** The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 statement of material facts.

fly within the cells, and that there were cockroach problems, but these conditions do not rise to the level of a constitutional violation. Accordingly, Govan's Eighth Amendment prison condition claim is dismissed.

## C. *Grievance*

 Govan claims that he was prevented from filing grievances. Prisoners retain the constitutional right to petition the government for the redress of grievances. *Overton v. Bazzetta,* —— U.S. ——, ——, 123 S.Ct. 2162, 2171, 156 L.Ed.2d 162 (2003)(citing *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Govan claims that inmates are instructed to fill out a grievance complaint on a sheet of paper and hand it to the corrections officer who then will read the complaint and supposedly rewrites the complaint on a grievance form. Govan claims that if the complaint was against an officer's friend, the grievance would be destroyed.

The defendants maintain that the record belies Govan's allegation that he was not permitted to file grievances. The defendants have provided fourteen different grievances filed by Govan from February 21, 1998, to November 5, 1998. Some of the issues for which Govan filed a complaint included denial of phone access to have his wife charged and arrested, missed meals when he went to court, and contesting a ticket for fainting. Furthermore, the defendants argue that the official paperwork does not account for the unofficial request to Tier Sergeants, Captains and/or handwritten memos to the administration requesting that he be contacted in his cell throughout his intermittent ten month stay. Moreover, Campbell's affidavit informs the court that the allegation that he permitted corrections officers to rip up grievance forms was untrue. In fact,

Campbell states that Govan was encouraged to write grievances so he would remain quiet. *Campbell Aff. at ¶ 4.*

The court notes that Govan makes no specific allegation that a particular grievance was somehow disregarded or ripped up. He claims that Albany had a policy to deny inmate grievances. As previously mentioned, conclusory allegations are insufficient to show that a constitutional violation occurred. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Furthermore, most of Govan's grievances went through the entire appellate process. Many of the grievances went to the Citizen's Review Board. This court finds that Govan was not precluded from filing grievances. Since Govan fails to state a specific claim for which relief can be granted, summary judgement in favor of the defendants is warranted.

## D. *Legal Mail*

 Govan contends that the defendants interfered with his legal mail. "It is accepted that a prisoner must be present when, for whatever reason, legal mail ·(clearly marked as such) is opened by prison officials ... and th[e] Constitution guarantees a prisoner[ ] 'reasonable access to the courts.'" *Standley v. Lyder,* 99 Civ 4711, 2001 WL 225035, at *2 (S.D.N.Y. March 6, 2001)(internal citation omitted) (citing *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986)) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). In order "[t]o prevail on a claim of interference with legal mail, a plaintiff must show that a pending or anticipated legal action was prejudiced by the alleged interference." *Standley,* 2001 WL 225035, at *2 (quoting *Morgan v. Montanye,* 516 F.2d 1367, 1372 (2d Cir. 1975) and *Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993)). The Second Circuit has clearly held that an isolated inci-

dence of interference with a prisoner's mail does not give rise to a cognizable claim under § 1983. *Id.* 2001 WL 225035 at *2 (citation omitted).

■ In this case, Govan alleges that the defendants twice interfered with his mail. Govan also claims that the defendants are responsible for the destruction of paperwork he left behind. The defendants maintain that the interruption of mail was not a facility problem. According to the defendants, Govan was informed that this issue was to be resolved with the United States Post Office. The defendants also maintain that Govan failed to show how the destruction of his paperwork caused an injury. Furthermore, they maintain that he abandoned his property.

This court finds that Govan's legal mail assertion fails to state a claim for which relief can be granted and dismissal is appropriate. He has failed to show that a pending or anticipated legal action was prejudiced by the alleged interference by the defendants. He further fails to name the defendants who allegedly destroyed his property. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citation omitted). As such, it is insufficient to allege that supervisory officials, Campbell and Szostak, are responsible for the unwarranted destruction of Govan's property.

Regardless of Govan's contention that the effort and stress including the cost to replace the items that the defendants allegedly destroyed will be great, this is insufficient to show a constitutional violation. As previously mentioned, an isolated incidence of interference with a prisoner's mail does not give rise to a cognizable claim under § 1983. Govan fails to even suggest that the interruption and/or the destruction of his property caused a legal action to be hindered. In addition, he admits leaving his documents behind in his cell and fails to name the specific person whom he believes destroyed his property. Accordingly, this court finds that Govan's legal mail claim is without merit and dismissal is appropriate.

### E. *Assault and Denial of Medical Claim*

■ Govan claims that the defendants denied him medical attention and subsequently assaulted him. As a general rule, a state has a constitutional obligation to provide inmates adequate medical care. *See West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Furthermore, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment also prohibits the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components, one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (citing *Hudson v. McMillian,* 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. *Blyden v. Mancusi,* 186 F.3d at 262 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298–299, 111 S.Ct. 2321, 115 L.Ed.2d 271). In an excessive force case, whether conduct was "wanton" turns on "whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *see also, Blyden v. Mancusi,* 186 F.3d at 262–63. The objective component of a cruel and unusual punishment claim focuses on the harm done, but the amount of harm that must be shown depends on the nature of the claim. *See Hudson,* 503 U.S. at 8, 112 S.Ct. 995. This objective component is "contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks omitted).

 However, a showing of extreme injury is not required when the claim is that prison officials used excessive force. In the excessive force context, society's expectations are different. *Sims,* 230 F.3d at 21. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [t]his is true whether or not significant injury is evident." *Id.* at 21 (citation omitted). Thus, "[t]he key inquiry under *Hudson* and its precedents is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.'" *Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994)(quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. 995). The Second Circuit has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims,* 230 F.3d at 22. Moreover, an allegation indicating "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Id.* (citations omitted).

 Simply put, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 10, 112 S.Ct. 995

(internal quotation marks omitted). However, when a prisoner alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, this states an Eighth Amendment claim on which he is entitled to present evidence. Nevertheless, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (citation omitted).

 In this case, Govan's Eighth Amendment claims are threefold. First, Govan claims that he was verbally abused by the defendants. Second, Govan claims that the defendants denied him medical attention after he was struck in the leg with a basketball. Third, he claims that Frese slammed him against the wall and rubbed up against him.

The defendants point out that Govan failed to date most of his allegations against the defendants. However, Govan's filed grievances clarify what occurred and when. On March 26, 1998, Govan wrote a grievance where he alleged that Frese and Rudolph verbally assaulted him. *Defs.['] Ex. 2A & B.* On April 24, 1998, Govan filed another grievance against Frese and Rudolph alleging that they physically assaulted him and denied him medical attention. The defendants provide Govan's medical progress notes from April 24, 1998. The medical record shows that Govan was seen at 4:00 p.m., half an hour after he states that the basketball incident occurred. *Defs.['] Ex. 3C.* The record shows that at 5:35 p.m., Govan had full-range of motion, and no swelling or bruising was noted. On April 28, 1998, Sgt. O'Hara's investigation report indicated that on April 24, 1998, at 9:30 p.m., Govan requested that he be allowed to withdraw the grievance that he filed against Frese. *Defs.['] Ex. 3E.*

All of Govan's claims involving a violation of his Eighth Amendment are dismissed. His claim involving verbal abuse is without merit. As noted, a claim under 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. As such, Govan's claims against the defendants for verbal harassment fails to state a claim for which relief can be granted. It may well be that the defendants used language which was unprofessional and unpleasant. This alone is insufficient to show a viable constitutional violation.

Moreover, the record contradicts Govan's allegations about the defendants denying him medical treatment. The record is clear that Govan was, in fact, provided with prompt medical attention. Despite complaints of right shoulder pain, the record shows that he had a full-range of motion. Furthermore, he was not bruised or swollen. Accordingly, Govan's allegation that he was denied medical treatment is without merit, therefore summary judgment is appropriate in favor of the defendants.

Lastly, the Second Circuit has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims*, 230 F.3d at 22. Even if this court presumed that Frese pushed him against the wall and rubbed against him, this "*de minimis*" use of force is insufficient to state a constitutional violation.[5] Accordingly, this court finds that summary judgment for the defendants is warranted.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that the defendants' motion for summary judgment be **GRANTED** in its entirety; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular mail.

---

5. In addition, Govan claims that on the same date and during the same incident, Frese made unwanted sexual advances against him. This contention does not appear on the grievance he filed on that date. The defendants contend that they were unaware of this allegation prior to Govan filing suit. Regardless, this allegation is nothing more than a conclusory allegation and must fall. *See e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).